case this morning is 19-2197, Allen, Jr. v. Environmental Restoration. Counsel, if you would please turn on your mics and cameras and please prepare to argue. I apologize, but it's saying that my video is stopped by the host. There we go. All right, good. We're ready to hear you, counsel. Good morning, your honors. May it please the court. My name is Rory Miller. I represent the Appellant Environmental Restoration, LLC. Mr. Miller, do you have a coat handy? Uh, yes. Hold on. I'm sorry. Thank you. Thank you. No problem. Thank you. We're informal, Mr. Miller, but not quite that informal. I apologize. It's the seated position that really did me in, your honor. Now, to continue, the case that's on appeal deals with whether or not the Supreme Court's international paper company v. Ouellette means what the Supreme Court said it means. And interestingly, this case presents an opportunity to see the value of a dissent other than simply an opportunity for a justice to express disagreement with the majority. In this case, the partial dissents by Justices Stevens and Brennan demonstrate that as requiring the point source rule under the Clean Water Act to apply to all laws, not simply substantive laws, and displace any of the forum state's rules, including conflict of laws, is correct. We see this because Justice Brennan's dissent is exactly what the district court did in this case. Justice Brennan urged that instead of what the Supreme Court majority did, a traditional conflict of law analysis be applied. That is not what the Clean Water Act requires. As the Supreme Court announced in the international paper and made clear in its subsequent decision of Arkansas v. Oklahoma, the Clean Water Act displaces all traditional common law, choice of law, and all forum state choice of law in favor of the application solely of the law of the state in which the source of the alleged pollution occurred. Now, counsel, in fairness, the limitations issue was not present in international paper, was it? No, there was not a statute of limitations issue in the international paper. That was entirely on choice of law writ large. However, the Supreme Court is fully capable of drawing whatever distinctions it wishes. It didn't say this is the substantive law of the state of Vermont. It didn't say only the substantive law of Vermont. It said the law of Vermont. But don't we generally presume that they're only addressing the issues before them, which in that case had to do with substantive law as opposed to procedural law? One would generally presume that, Your Honor. However, that's again where the dissents become very helpful to us. In the dissent by Justice Stevens, actually, he criticizes the majority for going above and beyond the narrow issue presented to it and making a sweeping generalization regarding the displacement of the form state's laws. And we see that this, in fact, is the meaning because Justice Stevens himself, who was critical of this expansive reading in international paper, authored the unanimous decision in Arkansas versus Oklahoma, which held that, and I quote, the only state law applicable to interstate discharge is the law of the state in which the point source is located. So while he was critical of the majority's decision to go beyond the narrow issue that was presented, he was not challenging its authority to do so. It's well known that the Supreme Court has the authority to pass on however narrow or broad an issue as it wants that's presented to it. It elected to do so in that case against the prudential urgings of Justice Stevens, but he did not challenge its ability to do so. And in fact, when given the opportunity writing for the majority of the unanimous court in Arkansas versus Oklahoma, did not take any steps to limit it or identify a disagreement with the earlier holding other than on that procedural basis, which he had previously identified and did not bring up again. So yes, while normally we assume that the court is making as narrow a ruling as possible, here, by the nature of its dissents, and the fact that that dissent was not objected to, or the majority opinion was not modified in response to, it's clear that in fact, in this instance, the Supreme Court did intend to announce a categorical role in the international paper, and as the entire unanimous Supreme Court reaffirmed a few years later in the Arkansas decision. So again, while that would be the normal presumption, that is not the case here, much like for example, the normal presumption is that the standard rules of conflict of laws apply to an analysis unless otherwise displaced by statute. Here, the Clean Water Act was designed to be a comprehensive regulatory program by Congress that displaced in its entirety, the earlier patchwork of sporadic and ad hoc approaches to the law. Doesn't that counsel in favor of the five-year limitations period so you would have a uniform nationwide limitations period? Sometimes it would. However, again, the decision made by Congress was that the point sources state law apply. And the issue there was whether or not there was predictability for a regulated entity. The Congress recognized in passing the Clean Water Act, the primary position of a point source state in regulating conduct within it. Here, the addition of a five-year statute of limitations actually would counsel against that deference to state courts and the, sorry, state law. And the reason for that is twofold. One, the scope of a substantive right toward liability is affected by the scope of the limitations. And it's a general principle of law that courts should not expand the remedies available under a state court's laws by virtue of a statute of limitations. That's one of the reasons why the federal general catch-all does not apply. Secondly, if we were to apply the federal general statute of limitations, we would be applying a federal statute of limitations to state law, a state law claim. That's correct, Your Honor. This is a state law tort claim that's at issue here. And so to apply the federal statute of limitations would be applying a federal statute of limitations to a state tort claim. The question here is really whether the specific act of Congress, the Clean Water Act, displaces traditional conflict of laws analyses by a district court sitting in diversity. Here it does. One of the things that I am questioning is why you're finding so hard not to do choice of law analysis for the statute of limitations because under Colorado choice of law statute, it looks to me like it would be Colorado's shorter statute of limitations because the substantive law is Colorado. Am I missing something there? You're not, Your Honor. However, that was not the conclusion reached by the district court. And the issue here, because this is an interlocutory appeal, not one after the full is whether or not the district court's analysis of the choice of law was correct. So we don't believe that the court even needs to get to that issue because choice of law has been displaced by the Clean Water Act and the point source rule. And you're relying on footnote 20 of the Supreme Court's decision in ALAP talking about choice of law? Yes. And generally, the point source rule as a whole and the Supreme Court throughout its decision in international paper versus Oulette and its subsequent decision in Arkansas versus Oklahoma, continuously and consistently used categorical language that the point source rule applies the law of the source state and displaces any statutory or common law of downstream states, in this case, for example, New Mexico. Now, one thing that I'm sure is in the back of everyone's minds, although not technically applicable to interpretation of the Supreme Court precedent, is whether this reaches a just result. And the answer to that is yes, even though it requires or would require dismissal of the plaintiff's claims in this case as time barred. The reason for that is because although here the point source rule, it would impose a narrower statute limitations in the forum states roles. This is not a rule that is inherently favorable to one side or the other. For example, what if the point source were New Mexico with a three-year statute limitations and the forum state were Colorado with the two? The opposite of what we have here. The international paper decision would require the application of the longer statute limitations in that case, because that is the law of the point source state. Inherently tied in this jurisprudence is the substantive rights and the procedural limitations upon those rights, including statutes of limitations. This has the additional benefit of avoiding jockeying or lobbying for forums for multi-district litigation, such as the current case. The current case is one of several that have been consolidated into New Mexico for MDL administration, and that was done despite the fact that there were a number of other forums. There could have been this case sent to Colorado district court. The state of Utah has claims. Its district courts may have also had jurisdiction. Rather than have a fight where one side or another seeks to gain a litigation advantage by choice of law provisions or where the multi-district panel chooses to assign a case for consolidation, the application of the point source rule and the proper application of the Supreme Court's precedent in international paper eliminates that need. There is easy predictability. Wherever the source of alleged water pollution exists, that state's tort law governs any claims that may exist for downstream plaintiffs, and that state's statute of limitations governs that, so that there is clear, consistent, and understandable rules rather than the ad hoc patchwork that was swept away in the city of Milwaukee versus Illinois and Michigan case by the Supreme Court in 1981. With that, I have about three minutes left I'd like to reserve for rebuttal, unless the court has other questions at this time. They're reserved. Thank you. Council, we're ready to hear you as Good morning, your honors. My name is Kate Furlick. I represent the Allen plaintiffs, the appellees in this case, who are a large group of Navajo farmers and ranchers that were damaged by the Gold King Mine spill. May it please the court. Why shouldn't we apply a point source uh law generally to start looking at this problem? Because, your honor, uniformly the courts have concluded that a forum state's application of its own statute of limitation governs. So just following that through, if there are uh damages downstream to three other residents of other states, and those three states all have a different statute of limitations, would the statute of limitation of the tort state, that is where the injury occurred, differ for all three sets of claimants? Your honor, the application of substantive law would not under OLEA. No, I understand. That's not, that's not, we're not, we don't have a question substantive law here. Let's get to the procedural question, which statute of limitations, and my question is, for example, point states A, B, and C each have a different statute limitation. Would we apply the statute of limitations for the residents of the each of those respective states? And whereas, for example, state residents of state A's claim may survive, B's would not, C would not, as an example. Yes, your honor, well potentially, because ultimately it is the forum state's procedural law that applies when sitting in diversity jurisdiction. And if the multi-district panel chose state B, where the statute had expired, would then it have expired for everybody else, even though the law in state A would have allowed it? Potentially, it would depend on the laws. I mean, well, for example, under Colorado, Colorado has a borrowing statute, you know, the Colorado courts sitting in diversity would go through the same analysis that New Mexico goes through. What is interesting and noteworthy is the appellant here is the party that moved to and in the motion to consolidate, which was filed about two years and two months after the Colorado two-year statute of limitations, they acknowledge that there are other claims that are going to be filed by the folks that preserve their administrative claims with the EPA, and that is the Navajo farmers and ranchers. So ER, the appellant here, elected and in fact urged the court, the case to be consolidated in the district of New Mexico. I don't really see how that impacts what the answer here is as a question of law. And I can't get over the Supreme Court and Aletz quoting with approval, the statement from Milwaukee three, that dischargers would be forced to meet not only the statutory limitations of all states potentially affected by their discharges, but also the common law standards developed through the case law of those states and saying that would be unacceptable under the purposes of the Clean Water Act state action rule. You know, I think the Supreme Court's told us the answer here. Well, Judge McHugh, I think that that would point to an argument for a federal statute of limitations, but- No, because a federal statute of limitations very clearly applies when federal Congress adopts a federal law and does not put a statute of limitations in it. What we're dealing with here is state tort law. So I don't see any application of the federal general statute of limitations at all. Well, and I understand that. And I agree that a forum states procedural rules should apply and they should go through their own choice of law analysis depending on where the Arkansas Justice Stevens, despite Mr. Miller's representation that he doesn't limit Oliet in any way, in fact does. And Stevens is writing for unanimous court and expressly states that our statement in Oliet concerned only an affected state's input into the permit process. And in his concurrence in the case, he also, I think the appellant misrepresents the argument here. He acknowledges that it's only a substantive law that applies to the Clean Water Act because a procedural law like the statute of limitations doesn't frustrate the purpose of the Clean Water Act, which is, you know, in summary to protect the nation's waters, but more specifically to protect the nation's waters. And that's why the substantive law applies. The states under the Clean Water Act are acting as the federal government in issuing permits through these EPA administered programs. It's just that downstream states or those impacted can't all of a sudden decide to impose higher water quality standards because that substantive state law requires different standards. I mean, Oliet in no way, shape or form upends an entire, you know, 200-year history of choice of law analysis. And in fact, in Oliet, international paper urges the court to say that venue must be brought in the point source state. And the court refuses to do that. And it would make sense if they were going to extend the procedural law of the, you know, whatever the point source state is to say, let it be venue then in the point source state because that court is most adept at applying its own procedural rules. And, you know, this is well articulated in the Anderson case, the Anderson Living Trust case, just the idea of the enormous burden of a forum state having to apply the procedural rules of another state. And where does this end, judges? I mean, does this extend to rules of discovery, process, service? I mean, it just absolutely is incongruent with 200 years of law. Let's go to some classic tort analysis here. Let's say a car is speeding from Colorado into New Mexico at a rate in excess of the speed limit of both states. And as a matter of law, then is negligent. He fails to apply his brakes. The driver fails to apply his brakes in Colorado, but hits somebody in New Mexico. Where did the tort occur? The actionable tort occur. So say that again. It takes too much time to state that again. I mean, if you could figure out the question, answer it. If you can't, we'll go on to something else. Well, the forum state, the state where the plaintiff sues, performs its own choice of law analysis and decides which substantive law to apply. And in New Mexico, which follows the first restatement of torts, it would be where the injury occurred. And that would be defined as the last act to complete the injury. And so it's very possible that New Mexico would apply Colorado substantive law in that case, but it would still follow its own procedures. And this is well established in Sun Oil, in this circuit's own decisions in Burnham. I would have thought that your answer would have been New Mexico, because that is the sine qua non of the tort. That's where the injury occurred. I'm sorry, I thought you said Colorado. I guess I sometimes my questions don't go through. I said, in what state did the tort occur was the question. And where was the accident? Yeah, thank you. That's really quite all right. Right. And I'm sorry. Let's go on to something else because I'm wasting your time. Okay, let me interrupt. As I understand what the Supreme Court and Congress are doing in allowing in focusing on the point, the source of the release, the state in which the environmental release happened, is that you have an analog of the federal court sort of sitting in diversity. But the idea is the result, no matter where you bring it in an affected state, should be the same result you would get in the source state. And here, what you want is a result that could never happen in the source state because your action is barred. Isn't that a problem for the overall goals of the statute here in terms of how it's designed? Your Honor, not at all. And the reason is that a foreign state always applies its procedural rules. It doesn't always if Congress has preempted it and put in a different procedure. And so, to wave around a bunch of procedure versus substantive cases that have to do with So, I'd like you to focus on the statute we're dealing with and its goals and purposes. Understood, Your Honor. The Clean Water Act is obviously silent on any sort of statute of limitations, but applying a foreign state's procedural rules does not frustrate the purpose of the Clean Water Act in any way. And there has been no argument made, no colorable argument, that it would in fact do this. The Clean Water Act deals with a permit system. There's two things. The nepotism side of the Clean Water Act deals with a permitting system. And there's a balance between the affected state and the source state in terms of how much input they have in setting the limits on the nepotism permit. But then you have another section of the Clean Water Act that allows for state tort actions based on damage caused to people for releases. And so, they're not necessarily the same. And the statute spreads the authority between affected states and source states with a lot more power in the source state, even on the permit side. Understood. And that is clearly to meet the goals of predictability in terms of substantive law. The point source state is the regulating entity for the discharger, no matter where it's coming from. And so, not only do the quality standards apply, but under OULET, the tort law of that state applies. But the substantive tort law is different than the procedural law of a foreign state. And I think citing all of those diversity cases, where courts sit in diversity cases, is just simply the longstanding principle of American jurisprudence, that this happens all the time. And there's no affirmative argument that somehow the Clean Water Act preempts this, or that OULET intends to sweep away the procedural rules. I'd like to point the court to cases that interpret OLIET or international paper. And those cases, and particularly the Coffman case, Ashley Doyle v. Coffman, addresses the exact issue for this body. And that is, you know, they don't get to the question of substantive law, but regardless whether the substantive law of the point source state applies, the procedural law, including the statute of limitations of the forum state, applies. And it's also interesting that, you know, in terms of federal preemption, I think that if this court does believe that there is some kind of federal preemption, that the standard federal statute of limitations should apply in the Ninth Circuit. That's what they're doing in order to resolve these questions. And there was just a recent case decided on that, we cite the majority of the cases in the brief. But in no way, shape, or form do any of the progeny cases of OLIET or just OLIET stand for the proposition that the Clean Water Act, you know, requires that a state's procedural law needs to be applied according to the source state. Thank you, counsel. Thank you, your honors. Your honors, I just have three very brief points that I'd like to highlight that I think respond to opposing counsel's arguments. First, the issue of how far do we go with procedure is, I believe, a red herring. In this instance, we're discussing the statute of limitations, which is so bound up with the right of remedy that the law affords that it really is not the same as rule of discovery. Procedural rules that make it more difficult to bring a claim are frequently upheld and imposed by federal courts. And statute of limitations that define the scope of a substantive right is one such thing. We cited some cases for that in our reply brief on page eight, but those include the Guarantee Trust versus New York, and Rachel versus Westlake Nursing Home partnership case out of the Tenth Circuit. In fact, that case specifically said this includes the applicable burdens, defenses, and limitations, your honors. Second, the issue of what Justice Stevens meant as he was writing the Arkansas case, whether I was misquoting it or not is up to your honors to decide. However, I would like to read one small bit of it. This is a quote from page 100 of that decision. The Clean Water Act, taken as a whole, its purposes and its history, preempted an action based on the law of the effective state, and that the only state law applicable to an interstate discharge is the law of the state in which the point source is located. The only law of the state is what Justice Stevens wrote for a unanimous court. Finally... But that begs Judge Carson's which is, I think, very tightly focused on that. That issue of statute of limitations was not even before the Supreme Court. And so what you're asking us to do is throw out all the eerie and post-eerie jurisprudence on all of these related issues and just go on a hope and a prayer on some theory that pre-substantive preemption somehow kicks includes procedural preemption. I'm not sure that I ever heard the answer to Judge Carson's seminal question because that is the issue for us to consider here. That's correct. And I'm not asking the court to go on a hope and a prayer. Congress has instructed the courts to do so in its passage of the Clean Water Act, which to quote the Deepwater Horizon case out of the Fifth Circuit, Congress could and did supplant federal common law with an overarching regulatory framework to protect the nation's interests. And then to quote the Fourth Circuit applying international paper to... I'm about to run out of time. May I have this quote before I finish, Your Honors? Well, I think we'll read the quote, and thank you very much for your arguments, both of you. They're very well presented. Thank you. The court is... the counsel are excused and the case is submitted.